**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| IN RE: KNIGHT BARRY TITLE, INC. DATA INCIDENT LITIGATION | Case No. 2:24-cv-00211-LA |
| This Document Relates To: All Actions | |

**PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Brenda Raner, Julie Lewandowski, Toby Johnson, and Michael Mullarkey (collectively, "Plaintiffs") submit this Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendant Knight Barry Title, Inc. ("KBT" or "Defendant") does not oppose certification of the Class[1] solely for purposes of effectuating the Settlement submitted for preliminary approval with this motion.

The Settlement follows extensive arm's-length negotiations supervised by a respected, experienced mediator. Under the Settlement, KBT, through its insurance carrier, will pay $1,100,000 into a non-reversionary common fund for the benefit of Plaintiffs and Class Members (the "Settlement Fund"). The Class Members will receive individual notice of the Settlement by direct email or U.S. mail. Every Class Member can make a claim for reimbursement of documented losses incurred as a result of the Data Incident, up to $5,000 or, alternatively, for a *pro rata* cash award. Additionally, every Class Member is entitled to claim three years of free credit monitoring and identity theft protection services, regardless of whether they make a claim for monetary benefits. Further, KBT has implemented or will implement certain reasonable steps to enhance the security of its systems and environments presently and in the future. Notice and Settlement

---

[1] Capitalized terms herein have the same meaning as those set forth in the Parties' Settlement Agreement and Release (referred to herein as the "Settlement Agreement," "Settlement," or "S.A."), attached as Exhibit 1 to the Declaration of Nickolas J. Hagman ("Hagman Decl.").

Administration costs, credit monitoring and theft protection, as well as litigation expenses, attorneys' fees, and Class Representative service awards as awarded by the Court, will be paid out of the Settlement Fund.

Plaintiffs and Proposed Class Counsel strongly endorse the Settlement as an excellent result that is in the best interests of the Class, particularly given the substantial risks and delay associated with continued litigation. They respectfully submit that the Court grant preliminary approval and direct that notice be sent to the Class in accordance with the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about August 15, 2023, KBT experienced a ransomware cyberattack, which compromised the personally identifying information ("PII" or "Private Information") of Plaintiffs and Class Members (the "Data Incident"). Plaintiffs and Class Members are current and former clients of KBT, and they provided their Private Information as a condition of receiving services from KBT. KBT sent Notice Letters to the 44,910 individuals whose information was compromised in the Incident.

In response, Plaintiffs filed putative class actions against KBT, which were consolidated on March 12, 2024. Plaintiffs filed their Consolidated Complaint on April 9, 2024, alleging (1) negligence, (2) negligence *per se*, (3) breach of implied contract, (4) unjust enrichment, (5) invasion of privacy, and (6) breach of implied covenant of good faith and fair dealing.

On May 24, 2024, Knight Barry filed a motion to dismiss the consolidated complaint for lack of standing, for failure to state a claim, and to strike class allegations. On September 12, 2024, the Honorable Lynn Adelman of the Eastern District of Wisconsin issued an order denying Knight Barry's motion to dismiss for lack of Article III standing, but required Plaintiffs to identify a non-Wisconsin class member to support CAFA jurisdiction. ECF 23. On October 7, 2024, Plaintiffs

2

filed their amended consolidated complaint, which added Plaintiff Michael Mullarkey, a citizen and resident of Illinois, as an additional plaintiff. ECF 24. And on October 17, 2024, Judge Adelman denied the remainder of Knight Barry's motion. ECF 25.

On December 30, 2024, the Parties agreed to mediate the dispute, and on January 7, 2025, the Parties jointly stipulated to staying the case pending mediation. *See* Hagman Decl. ¶ 9. In the lead-up to the mediation, the parties exchanged informal discovery that clarified the scope and causes of the Data Incident and engaged in pre-mediation arm's length settlement negotiations over the course of several months. *Id.* at ¶¶ 10–11. The mediation before Bruce A. Friedman, Esq., of JAMS initially concluded without resolution, but continued discussions between the Parties with the aid of the mediator eventually culminated in the Parties accepting a mediator's proposal. *Id.* at ¶ 11. This proposed Settlement was therefore the product of arm's-length negotiations.

## SETTLEMENT TERMS

### A.    Proposed Class

The Settlement will provide substantial relief for the Proposed Class, defined as "all individuals to whom Defendant sent notice of the Data Incident on or around February 1, 2024." S.A. ¶ 1.7. The Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this Settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. S.A. ¶ 1.7.

The Class contains approximately 44,910 persons. Hagman Decl. ¶ 6.

**B.      Settlement Benefits – Monetary Relief**

The Settlement negotiated on behalf of the Class provides a $1,100,000 non-reversionary Settlement Fund, from which Class Members may make a claim for the following benefits:

(a)      *Out-of-Pocket Loss Payment*. Class Members may submit a claim for a Settlement Payment of up to $5,000 for reimbursement of out-of-pocket losses suffered as a result of the Data Incident. To receive reimbursement for Out-of-Pocket Losses, a Class Member must submit an attestation regarding any actual and unreimbursed Documented Loss, and reasonable documentation that demonstrates the Documented Loss itself. S.A. ¶ 2(A).

(a)      *Cash Award*. In the alternative to reimbursement for Out-of-Pocket Losses, Class Members who submit a valid and timely Claim Form may elect to receive a payment (a "Cash Award"). The cash awards for all valid claimants shall be a *pro rata* share of the remainder of the Settlement Fund after payment of the payment of Attorneys' fees, litigation expense reimbursements, service awards, settlement administration costs, as well as all Valid Claims for: Out-of-Pocket loss reimbursements, and the cost of approved claims for Identity Theft Protection and Credit Monitoring services. S.A. ¶¶ 2(B).

(c)      *Credit Monitoring and Insurance Services*. In addition to claiming either the Out-of-Pocket Loss Payment or Cash Award, each Class Member who submits a valid and timely Claim Form may elect to receive three (3) years of Credit Monitoring and Insurance Services ("CMIS"). The CMIS will include the following services to be provided to each Class Member who submits a valid and timely Claim Form and elects the CMIS: (i) up to $1 million dollars of identity theft insurance coverage; (ii) one bureau credit monitoring providing notice of changes to the Class Members' credit profile; (iii) identity restoration and recovery services. S.A. ¶ 2(C).

4

### C. Class Notice and Settlement Administration

Proposed Class Counsel engaged in a competitive bidding process for administrative services for this Settlement. Hagman Decl. ¶ 21. After thorough vetting of the proposals, the Parties selected, and request that the Court approve Kroll Settlement Administration LLC ("Kroll") as Settlement Administrator. S.A. ¶ 1.34. The Settlement Administrator will be responsible for providing notice to Class Members, maintaining a Settlement Website with all pertinent documents and deadlines, communicating with Class Members, reviewing and making determinations regarding claims, and disbursing settlement payments.

The Notice Program will be paid for from the Settlement Fund and has been designed to provide the best notice practicable, aiming to reach the greatest number of Class Members possible. Hagman Decl. ¶ 23. Notice will be given to the Class via direct, individual notice, by sending the Short Notice (S.A., Exhibit D) via email or U.S. mail to the postal addresses provided to the Settlement Administrator by KBT. S.A. ¶ 3.2. The Long Notice (S.A. Exhibit B) will be posted on the Settlement Website, which the Settlement Administrator will establish prior to the dissemination of the Short Form Notice, along with other important documents, such as the Settlement Agreement and the motions for final settlement approval and for attorneys' fees, expenses, and service awards once they are filed. S.A. ¶ 3.2.

The notice documents clearly and concisely apprise Class Members of all the information they need to know regarding how to make a claim, opt out, or object to the Settlement. Hagman Decl. ¶ 22. The timing of the Notice Program will give Class Members adequate time to determine whether to submit a claim, opt out, or object. In addition to a Settlement Website, a toll-free number will be established to address Class Members' questions and assist them with their options and with making claims under the Settlement. S.A. ¶ 3.2.

### D. Attorneys' Fees and Expenses

If the Settlement is preliminarily approved, Proposed Class Counsel will apply for an award of reasonable attorneys' fees and costs no later than 14 days prior to the opt-out/objection deadline. Pursuant to the Settlement Agreement, Proposed Class Counsel will seek an award of Attorneys' Fees of no more than one-third of the Settlement Fund ($366,630.00), plus reasonable costs and expenses incurred in the Litigation. S.A. ¶¶ 7.1.–7.2.

### E. Service Award to Plaintiffs

Plaintiffs played a crucial role in this matter, including stepping up publicly to represent the other individuals impacted by the Data Incident and providing their Counsel with important information about the impact of the Data Incident. Plaintiffs have been personally involved in the case and support the Settlement. Hagman Decl. ¶ 30. Plaintiffs will separately petition the Court for service awards of $2,500 for each Plaintiff in recognition of the time, effort, and expense they incurred pursuing claims for the benefit of the Class. S.A. ¶ 7.3.

### F. Release

Upon entry of the Final Approval Order, Plaintiffs and Class Members who do not submit a valid and timely Opt-Out Request will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A. ¶ 6.1. "Released Claims" are fully defined in Section 1.29 of the Settlement Agreement, and include all claims "any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality . . . whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Class Member against any of the Released Persons based on, relating to,

concerning or arising out of the Data Incident and alleged theft of other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation" other than claims relating to the enforcement of the Settlement Agreement and the claims of any Class Members who timely opted out of the class. S.A. ¶ 1.29.

## ARGUMENTS AND AUTHORITY

As a matter of public policy, the law favors and encourages settlements. *National Cas. Co. v. White Mountains Reinsurance Co. of America*, 735 F.3d 549, 556 (7th Cir. 2013). Indeed, there is an "overriding public interest in favor of settlement of class actions." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985).

The Court's review of a proposed class action settlement generally involves three steps: 1) consideration of a written motion for preliminary approval; 2) dissemination of notice of the Settlement to Class Members; and 3) conducting a final approval hearing where, among other things, Settlement Class Members have an opportunity to present their views regarding the settlement. *See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§11.22 et seq. (5th ed. 2011). Courts use this three-step process to act as an "independent guardian" of class interests and safeguard class members' procedural due process rights. *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013).

For the first step of the settlement approval process, the Court conducts a preliminary evaluation to determine "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (internal citations omitted). At this preliminary stage, the main question the court asks is whether the proposed settlement "falls within the range of possible approval." *Chesemore v. Alliance Holdings, Inc.*, 2014 WL 12730484 at *1 (W.D. Wis. Apr. 9, 2014) (internal citations

7

omitted); *see also In re AT&T Mobility Wireless.*, 270 F.R.D. at 346; *Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("The courts of appeals have required that district court approval of a settlement pursuant to Rule 23(e) be given only where the district finds the settlement fair, reasonable and adequate."). If the Court finds the Settlement within the range of possible approval at the time of preliminary approval, notice of the Settlement will be given to Settlement Class Members, and a hearing will be scheduled to consider final settlement approval.

Accordingly, the Court assesses the ultimate question of fairness only after the final hearing, after notice of the settlement has been given to the class members, and after the class members have had the opportunity to voice their view of the settlement. *See Moore's Federal Practice*, 23.165[3] (3d ed. 2005). Indeed, "[i]n this circuit, the practice is for the court to give its preliminary approval after reviewing the proposed settlement and then to give final approval after notifying the class members and holding a hearing." *Jones*, 2018 WL 11236460 at *1.

However, the Supreme Court has cautioned that, in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), cert. denied, 478 U.S. 1004 (1986); *Isby v. Bayh*, 75 F.3d 1191, 1196-97 (7th Cir. 1996).

At this juncture, Plaintiffs request that the Court grant preliminary approval of the settlement, which only requires that the Court find that the proposed settlement is "within the range of possible approval." *Chesemore*, 2014 WL 12730484 at *1.

## A. Certification of the Class for Settlement Purposes is Appropriate

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Here, Plaintiffs seek certification of the Class under Rule 23(b)(3), which provides that certification is appropriate when a common question of law or fact for plaintiffs' claims predominates over any individual issues and a showing that the class action mechanism is the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met here for settlement purposes.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no specific size of class that is required to demonstrate numerosity, but generally, a proposed class in excess of 40 satisfies numerosity. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *See also* 1 McLaughlin on Class Actions § 4:5 (15th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."). Numbering approximately 44,910 individuals, the proposed class easily satisfies the numerosity requirement. Joinder of so many individuals is clearly impracticable.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement

is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Commonality focuses on the relationship of common facts and legal issues among class members. 1 H. Newberg & A. Conte, *Newberg on Class Actions*, § 3:10 at 271 (4th ed. 2002).

Here, the claims depend on the central question of whether KBT's security environment was adequate to protect Class Members' Private Information. Other common questions include: whether KBT failed to implement adequate data security measures; whether Class Members' Private Information was compromised in the Data Incident; whether KBT owed a duty to Plaintiffs and Class members; whether KBT breached its duties; whether KBT's conduct was unfair; and whether KBT unreasonably delayed in notifying Plaintiffs and class members of the material facts of the Data Incident. Resolving these common questions requires common evidence that does not vary from Class Member to Class Member, and so can be fairly resolved—at least for purposes of settlement—for all Class Members at once. Courts in this Circuit have previously addressed this requirement in the context of cybersecurity incident class actions and found it readily satisfied. *See Remijas v. The Neiman Marcus Group, LLC*, No. 1:14CV01735 (N.D. Ill. Nov. 15, 2019); *Fox v. Iowa Health System*, No. 3:18CV00327 (W.D. Wis. Sep. 16, 2020).

### 3.     Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory." *Rosario v. Livaditi*s, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La*

*Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). While "the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotations omitted).

Here, the claims of Plaintiffs and the Class Members all arose from KBT's alleged failure to protect the Private Information. Plaintiffs allege their Private Information and that of the Class was potentially compromised, and therefore were damaged by the same allegedly inadequate data security that they allege harmed the rest of the Class. Thus, Plaintiffs' claims are typical.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied where the class representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class. Moreover, "it is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty." *Ebersohl v. Bechtel Corp.*, 2010 WL 2266736, at *2 (S.D. Ill. June 7, 2010) (quoting *Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

None of the Plaintiffs have any conflicts with the Class and has participated actively in the case. Hagman Decl. ¶¶ 30–31. Furthermore, Proposed Class Counsel have decades of combined experience as zealous class action litigators, are considered leaders in the area of data breach

litigation, and have been named lead counsel in numerous data breach class actions; as such, they are well suited to represent Plaintiffs and the Class. *See* Hagman Decl. ¶¶ 35–56; Exhibits 3–5 to Hagman Decl. (Proposed Class Counsels' firm resumes).

### 5. Certification under Rule 23(b)(3) is appropriate

Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. Here, Fed. R. Civ. P. 23(b)(3) is satisfied because: (i) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (ii) the class action mechanism is superior to any other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### a. Common Questions of Law and Fact Predominate

In this case, the common factual and legal questions form the core of the entire litigation. Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013). Plaintiffs need only show that "common questions 'predominate over any questions affecting only individual [class] members.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)); *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010), *reversed on other grounds by Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (The predominance requirement may be satisfied when "the central questions in the litigation are the same for all class members"). Class action status is appropriate where common questions represent a significant aspect of a case, and they can be resolved in a single action. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778, at 528 (2d ed. 1986). Common questions, however, need not be dispositive of the entire action, because "predominate" does not mean

"determinative." *Id.* at 528-29. The presence of "some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017.

Here, the common questions of law predominate over any individual question, as to both liability and damages suffered. Plaintiffs' claims arise out of the same Data Incident and depend, first and foremost, on whether KBT used reasonable data security measures to protect Class Members' Private Information. Plaintiffs assert that the question can be resolved, for purposes of settlement, using the same evidence for all Class Members, and therefore is precisely the type of predominant question that makes a class-wide settlement worthwhile. In effect, the claims are all based upon uniform conduct regarding a single Data Incident that affected all Class Members in similar fashion. Because these core issues involve uniform conduct common to all proposed Class Members, the Rule 23(b)(3) predominance requirement is satisfied.

### b. A Class Action is the Superior Method of Adjudicating the Case

The second prong of Rule 23(b)(3)—a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted).

Here, adjudicating individual actions is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are complex, and the required expert testimony and document review costly. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). No single member of the class has an interest in controlling the prosecution of this

action because Plaintiffs' claims and those of Class Members concern the same incident. Alternatives to a class action are either no recourse for more than 40,000 individuals or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. There are thousands of Class Members with modest individual claims, most of whom likely lack the resources necessary to pursue individual legal redress. These realities strongly warrant a finding that a class action is a superior method of adjudication and the Court may certify the Class for settlement under Rule 23(b)(3).

**B.    The Proposed Settlement Satisfies the Standard for Preliminary Approval**

After determining that certification of the Class is appropriate, the Court must then determine whether the Settlement is worthy of preliminary approval and providing notice to the class. This Settlement satisfies all the factors set forth by the Seventh Circuit in assessing whether a proposed settlement agreement is within the range of fair, reasonable, and adequate.

> In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.

*In re AT & T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). "[T]he first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199. The Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement." *Id.* at 1198-99. Further, "[t]he essence of settlement is compromise . . . [t]hus the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *EEOC v. Hiram Walker & Sons*, 768 F.2d at 889. Indeed, a court should not reject a

14

settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Here, the Settlement is well "within the range of possible approval."

### 1. The Risks of Plaintiffs' Case Strongly Favor Settlement Compared to the Benefits Provided by the Settlement

The most important settlement-approval factor is "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *In re AT&T Mobility Wireless*, 270 F.R.D. at 346 (internal citations omitted). The Seventh Circuit is clear that "[a]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Id.* at 347. Here, Plaintiffs believe in the merits of their case, but must acknowledge the risks of continuing to litigate the action. *See Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex.").

Although nearly all class actions involve a high level of risk, expense, and complexity, the size and magnitude of the Data Incident in this case would have made continued litigation lengthy, complex, and difficult, and the rapid evolution of case law in this area of the law makes outcomes uncertain while increasing litigation expense. Given the obstacles and inherent risks Plaintiffs face with respect to their claims, including risks relating to class certification, summary judgment, and trial, the substantial benefits the Settlement provides favor preliminary approval of the Settlement. Hagman Decl. ¶ 34.

Historically, data breach cases face substantial hurdles in surviving even the pleadings stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases). Even large cases implicating data more sensitive than that at issue here have been found wanting at the district court level. *In re U.S. Office of Pers.*

*Mgmt. Data Sec. Breach Liti*g., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."). Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and uncertain of all class actions, making settlement a prudent path when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Proposed Class Counsel is unaware of a single data breach class action that has been tried to a jury. As in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which could result in zero recovery to the class and would further delay redress for the breach victims.

Finally, the Parties have not briefed, and the Court has not yet certified, any class treatment of the claims. If they were to proceed to litigate through trial, Plaintiffs would face risks in obtaining and maintaining certification of the class, which Defendant would likely oppose in the absence of a settlement. The relative absence of trial class certification precedent in the relatively novel data breach setting adds to the risks posed by continued litigation.

Given the risks and uncertainties presented by continued litigation, the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Class Members. Every Class Member can claim three years of free Credit Monitoring and identity theft protection services, a valuable benefit. Moreover, each Class Member is eligible to make a claim for $5,000 in reimbursements for Out-Of-Pocket Losses, or an alternative Cash Award.

This Settlement is a strong result for the Class and is in line with other settlements in cases involving data breaches of similar scope. The $1,100,000 fund for a Class of approximately 44,910

people apportions out to approximately $24.49 per class member (assuming every class member claimed). This is significantly better than many approved data breach settlements. Because the Settlement amount here compares favorably to that achieved in other settlements approved in similar cases, this factor weighs in favor of the Settlement.

### 2. The Complexity, Length, and Expense of Continued Litigation Favors Settlement

The likely complexity, length, and expense of continued litigation are relevant factors in assessing a proposed settlement. *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015). The Settlement makes a final decision on several disputed factual and legal issues unnecessary. While the Parties have conducted informal discovery for settlement purposes, if litigation were to proceed, the parties would need to engage in further and significant discovery. Both parties would require experts. Costs of testifying experts regarding the economic harm caused to consumers, discovery, class certification, summary judgment motion practice, as well as other pre-trial and trial expenses, would be substantial. Continued litigation would likely involve, as indicated by the procedural history in this matter, motions to dismiss, motions for summary judgment, a motion for class certification, and one or more interlocutory appeals, all of which would delay final resolution. This factor also weighs in favor of preliminary approval.

### 3. There is No Opposition to Settlement Among the Effected Parties

At the current stage of the litigation, prior to the dissemination of the class notice, no Class Members, including the named Plaintiffs, have indicated any objections to the proposed Settlement.

### 4. The Settlement is the Product of Informed, Non-Collusive Negotiations

A proposed settlement is presumed to be fair and reasonable when it is the result of arm's-length negotiations. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325. This presumption is applicable here.

As discussed above, the Settlement is the result of arm's-length negotiations, including mediation with an experienced data breach class action mediator Bruce A. Friedman, Esq., and a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. Indeed, the Settlement was reached only after Proposed Class Counsel analyzed information provided by Defendant in informal discovery, conducted interviews, and performed other meticulous investigation of the Data Incident. Given these facts, the Settlement is non-collusive.

### 5. The Parties Engaged in Significant Motion Practice and Informal Discovery

Proposed Class Counsel gathered information that was available regarding KBT and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to Plaintiffs and the Class. Hagman Decl. ¶¶ 8, 10, 12. Further, the Parties informally exchanged non-public information concerning the Data Incident and the Class before and during the mediation and settlement negotiation process. *Id.* KBT also provided confirmatory discovery as part of the Settlement. *Id*. In short, Plaintiffs and Proposed Class Counsel entered the Settlement after being well informed about the strengths and weaknesses of this case, and they had sufficient information to conclude that the Settlement is in the best interest of the Class.

### 6. Proposed Class Counsel Strongly Support the Settlement

Proposed Class Counsel are highly experienced in litigating complex class actions and are considered leaders in the field of data breach litigation. They have been appointed as lead or co-lead counsel on numerous data breach cases and were appointed by this Court to serve as interim

class counsel. *See* Hagman Decl. ¶¶ 35–56; Exhibits 3–5 to Hagman Decl. Their professional experience, including in prosecuting similar class actions, enabled Counsel to provide exemplary representation for the Class in prosecuting claims and negotiating on the Class's behalf.

Upon learning of the data breach, Proposed Class Counsel engaged in a rigorous investigation before filing suit. Hagman Decl. ¶¶ 5–7. Proposed Class Counsel recognized the opportunity and potential benefit to the Class of early resolution. With the assistance of an experienced mediator, Proposed Class Counsel negotiated for and reached a proposed settlement that is in the best interest of the Class. As detailed above, the Settlement was the result of months of extensive and arm's-length settlement negotiations with an experienced mediator. Hagman Decl. ¶¶ 9–14. Proposed Class Counsel endorse the Settlement without reservation. *Id.* ¶¶ 33–34.

C.       **The Court Should Approve the Proposed Notice Program**

After a competitive bidding process, both Parties' counsel have agreed, subject to Court approval, to retain as the settlement administrator Kroll Settlement Administration LLC ("Kroll"), an experienced and competent settlement and claims administrator familiar with handling data breach settlements. *See* Declaration of Patrick Passarella ("Admin Declaration"), attached as Exhibit 2 to the Hagman Declaration. The Settlement Administrator is tasked with reviewing and determining the validity of submitted claims and will provide Class Members with an opportunity to correct any deficiency submissions. *Id.*

Kroll will use all reasonable efforts to provide direct and individual notice to each potential Class Member by email or U.S. mail. *Id.* Prior to sending the Short Notice, Kroll will check all mailing addresses against the National Change of Address ("NCOA") database maintained by the

USPS to ensure all address information is up-to-date and accurately formatted for mailing.[2] *Id.* Notices that are returned as undeliverable will be re-sent to forwarding addresses and skip traces will be used to find the current addresses of Class Members. S.A. ¶ 3.2.

The costs of administering the Settlement will be paid from the Settlement Fund. *Id.* The Notice Program and Claim Forms negotiated by the Parties are clear, concise, and inform Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt out of the Settlement. S.A. Exs. A, B, and D.

The Administrator will also establish a dedicated Settlement Website that will allow Class Members to file an online Claim Form. The Settlement Website will also include relevant dates, answers to frequently asked questions, instructions for how Class Members may opt out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. S.A. ¶ 3.2. The Administrator will also establish a toll-free help line where callers will be able to learn more about the Settlement. *Id*.

The Notice Program is reasonably calculated under all the circumstances to apprise Class Members of the pendency of the action and afford them an opportunity to present their objections. Kroll estimates that direct notice will reach at least 90% of the Class. Admin Declaration ¶ 15.

### D. The Court Should Appoint Proposed Class Counsel

Proposed Class Counsel have extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Hagman Decl. ¶¶ 35–56. The Settlement they negotiated on behalf of the class confirms their adequacy. The Proposed Class Counsel have

---

[2] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records, including names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery-point-coded addresses, for matches made to the NCOA file for individual, family, and business moves.

no interests that conflict with those of the Class. Hagman Decl. ¶¶ 33. And the Proposed Class Counsel have substantial financial resources to see this case through to any conclusion. *Id.* Accordingly, the Court should appoint Nickolas J. Hagman of Cafferty Clobes Meriwether & Sprengel, LLP, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, and Kevin Laukaitis of Laukaitis Law, LLC as Proposed Class Counsel.

## CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with significant monetary and equitable relief. For all the above reasons, Plaintiffs respectfully request this Court grant their Motion preliminarily approving the Settlement and direct that Notice be sent to the Class.


DATED this 2nd day of October, 2025.　　　　Respectfully submitted,


By: */s/ Nickolas J. Hagman*
　　Nickolas J. Hagman
　　Daniel O. Herrera
　　Alex Lee
　　**CAFFERTY CLOBES MERIWETHER**
　　**& SPRENGEL LLP**
　　135 S. LaSalle, Suite 3210
　　Chicago, Illinois 60603
　　Telephone: (312) 782-4880
　　Fax: (312) 782-4485
　　rnhagman@caffertyclobes.com
　　dherrera@caffertyclobes.com
　　alee@caffertyclobes.com

　　Gary M. Klinger
　　**MILBERG COLEMAN BRYSON**
　　**PHILLIPS GROSSMAN PLLC**
　　227 W. Monroe Street, Suite 2100
　　Chicago, IL 60606
　　Tel: (866) 252-0878
　　gklinger@milberg.com

21

Kevin Laukaitis
**LAUKAITIS LAW LLC**
954 Avenida Ponce De León
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Interim Co-Lead Class Counsel*

Anthony Procaccio
**A. PROCACCIO LAW OFFICE, S.C.**
1433 N. Water St., Suite 400
Milwaukee, WI 53202
T: (414) 644-0321
anthony@aprolawoffice.com

*Plaintiffs' Interim Liaison Counsel*