# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN RE: KNIGHT BARRY TITLE, INC. DATA INCIDENT LITIGATION<br><br>This Document Relates To: All Actions | Case No. 2:24-cv-00211-LA |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

Plaintiffs Brenda Raner, Julie Lewandowski, Toby Johnson, and Michael Mullarkey (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, respectfully move this Honorable Court for final approval of the proposed settlement of this class action lawsuit. Defendant Knight Barry Title, Inc. ("KBT" or "Defendant" and together with Plaintiffs, the "Parties"), through counsel, does not oppose this Motion.

## I.     INTRODUCTION

On October 17, 2025, this Court preliminarily approved a proposed class action settlement between Plaintiffs and Defendant. ECF No. 35. Class Counsel's efforts created distinct monetary benefits for the approximately 44,910 Settlement Class Members in the form of a $1,100,000 non-reversionary common fund from which Settlement Class Members can claim reimbursement for up to $5,000 in Out-of-Pocket Losses, a *pro rata* Cash Payment, and Identity Theft Protection and Credit Monitoring.[1] Settlement Class Members will further benefit from equitable relief in the form of substantial business practice changes designed to improve Defendant's data security. The cost of the data security related business practices to date has been $112,441.96, these costs are expected to increase by 3-8% per year, and Defendant anticipates incurring such costs indefinitely. S.A. ¶ 2(D). These business practice changes will ensure that the Personal Information of the

---

[1] Capitalized terms herein have the same meaning as those set forth in the Parties' Settlement Agreement and Release (the "Settlement Agreement," "Settlement," or "S.A."), attached as Exhibit 1 to ECF Doc. 33.

Settlement Class Members is well-protected now and in the future, and is another valuable benefit provided by this Settlement.

After Preliminary Approval was granted, notice issued to the Class. The Settlement involved a comprehensive notice program and user-friendly claims process that has been (and continues to be) implemented by the Settlement Administrator, Kroll Settlement Administration LLC ("Kroll"). *See* Declaration of Andrea Dudinsky of Kroll Settlement Administration LLC in connection with Final Approval of the Settlement ("Kroll Decl."), ¶¶ 3-10 (attached hereto as **Exhibit 1**). The Court-approved notice program provided direct notice by U.S. mail, the creation of a toll-free telephone number to answer Settlement Class Members' questions, and the creation of a Settlement Website. *Id*. ¶¶ 7-10. On January 9, 2026, at the direction of Class Counsel, Kroll also sent reminder notices to Settlement Class Members who have not yet submitted a claim. The Notice campaign was highly effective, with direct notice successfully reaching 92.69% of the Settlement Class Members.

The reaction from Settlement Class Members has been positive and strongly supports final approval. The deadline to file objections or to request exclusion was January 16, 2026. *Id*. ¶ 17. No Settlement Class Member has objected to the Settlement or to Class Counsel's requested attorneys' fees, expenses and Service Awards. Moreover, no Settlement Class Member has requested exclusion from this Settlement. The Settlement Class's positive response to this Settlement speaks loudly and unequivocally in favor of final approval.

The deadline to submit a claim is February 17, 2026, and 3,660 claims have been received thus far. *Id*. ¶ 15. This works out to a claims rate of 8.27% percent with nearly a week left until the February 17, 2026 Claims Deadline. This claims rate is commensurate with, and greatly exceeds, the claims rate in other large data breach settlements finally approved by courts, including this

Court. *See, e.g., In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions.") (Adelman, J.) Considering the valuable benefits conveyed to Settlement Class Members, and the significant risks they would face through continued litigation, the Settlement is fair, reasonable, and adequate, meets all the applicable criteria for approval under Rule 23(e), and merits final approval.[2]

## II. CASE SUMMARY

On or about August 15, 2023, KBT experienced a ransomware cyberattack which compromised the personally identifying information ("PII" or "Private Information") of Plaintiffs and Class Members (the "Data Incident"). Plaintiffs and Class Members are current and former clients of KBT who provided their Private Information to KBT as a condition of receiving services. KBT sent notice to 44,910 individuals whose information was compromised in the Data Incident.

In response, Plaintiffs filed putative class actions against KBT, which were consolidated on March 12, 2024. Plaintiffs filed their Consolidated Complaint on April 9, 2024, alleging (1) negligence, (2) negligence *per se*, (3) breach of implied contract, (4) unjust enrichment, (5) invasion of privacy, and (6) breach of implied covenant of good faith and fair dealing.

On May 24, 2024, Knight Barry filed a motion to dismiss the consolidated complaint for lack of standing, for failure to state a claim, and to strike class allegations. On September 12, 2024, the Court issued an order denying Knight Barry's motion to dismiss for lack of Article III standing, but required Plaintiffs to identify a non-Wisconsin class member to support CAFA jurisdiction.

---

[2] In the interest of judicial efficiency, for the factual and procedural background of the proposed Settlement, Plaintiffs respectfully refer the Court to, and hereby incorporate by reference, the case summary and procedural history in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support, filed on November 7, 2024, and Motion for Attorneys' Fees, Costs, and Service Awards. *See* ECF Nos. 32-33 & 35-36.

ECF 23. On October 7, 2024, Plaintiffs filed their amended consolidated complaint, which added Plaintiff Mullarkey, a citizen and resident of Illinois, as an additional plaintiff. ECF 24. And on October 17, 2024, Judge Adelman denied the remainder of Knight Barry's motion. ECF 25.

On December 30, 2024, the Parties agreed to mediate the dispute, and on January 7, 2025, the Parties jointly stipulated to staying the case pending mediation. *See* ECF Doc. 33 ¶ 9. In the lead-up to the mediation, the Parties exchanged informal discovery that clarified the scope and causes of the Data Incident and engaged in pre-mediation arm's-length settlement negotiations over the course of several months. *Id.* at ¶ 10. The mediation before Bruce A. Friedman, Esq., of JAMS initially concluded without resolution, but discussions continued between the Parties with the aid of the mediator, and the Parties ultimately accepted the mediator's proposal. *Id.* at ¶ 11. This proposed Settlement was therefore the product of arm's-length negotiations.

Plaintiffs moved for preliminary approval on October 2, 2025, ECF Doc. 32, which this Court granted on October 17, 2025. ECF Doc. 35. Notice subsequently issued to the Class.

## III. SUMMARY OF SETTLEMENT

### A. Proposed Class

The Settlement provides substantial relief for the Class, defined as "all individuals to whom Defendant sent notice of the Data Incident on or around February 1, 2024." S.A. ¶ 1.7. The Class excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this Settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.* The Class contains approximately 44,910 persons. ECF Doc. 33, ¶ 4.

4

Case 2:24-cv-00211-LA   Filed 02/13/26   Page 4 of 18   Document 37

### B. Settlement Benefits – Monetary Relief

The Settlement negotiated on behalf of the Class provides a $1,100,000 non-reversionary Settlement Fund, from which Class Members may claim the following benefits:

(a) *Out-of-Pocket Loss Payment*. Class Members may submit a claim for reimbursement of up to $5,000 in out-of-pocket losses suffered as a result of the Data Incident, supported by an attestation and reasonable documentation demonstrating the losses. S.A. ¶ 2(A).

(a) *Cash Award*. In the alternative to reimbursement for Out-of-Pocket Losses, Class Members may instead elect to receive a payment (a "Cash Award"). The cash awards are calculated as a *pro rata* share of the remainder of the Settlement Fund after payment of the payment of attorneys' fees, litigation expense reimbursements, service awards, settlement administration costs, Valid Claims for Out-of-Pocket loss reimbursements, and the costs for Identity Theft Protection and Credit Monitoring services. S.A. ¶ 2(B).

(c) *Credit Monitoring and Insurance Services*. In addition to the Out-of-Pocket Loss reimbursement or Cash Award, Class Members may claim three (3) years of Credit Monitoring and Insurance Services ("CMIS"). The CMIS will include: (i) up to $1 million dollars of identity theft insurance coverage; (ii) one-bureau credit monitoring which provides notice of changes to the Class Members' credit profile; and (iii) identity restoration and recovery services. S.A. ¶ 2(C).

(d) *Business Practice Changes.* Defendant has implemented substantial business practice changes designed to improve its data security and has agreed to provide Class Counsel with a confidential declaration detailing these changes, so that any data security improvements are not made publicly available. S.A. ¶ 2(D). The cost of the data security related business practices to date has been $112,441.96, these costs are expected to increase by 3-8% per year, and Defendant anticipates incurring such costs indefinitely. *Id*.

## IV. THE NOTICE PROGRAM AND CLAIMS PROCESS

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice Plan in this case was robust and satisfied all due process requirements. As outlined in detail in the declaration of the Settlement Administrator, the Notice Plan here and its execution satisfied all the requirements of Rule 23(c). Commencing on November 17, 2025, Kroll mailed notice directly to 44,234 Settlement Class Members. Kroll Decl. ¶ 9. The Short Notice provided an overview of the settlement terms, the monetary benefits available, the options available to Class Members, and the Settlement Website and toll-free number where additional settlement information could be obtained. SA Ex. C. After all remailings, Kroll opines that initial notice likely reached 41,001 of the 44,234 Settlement Class Members, which equates to a reach rate of the direct mail notice of approximately 92.69%. Kroll Decl. ¶ 13. Based upon the direct mailings alone (and

not including the reminder notices), notice here goes well beyond the 70% notice threshold that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. *Id*.

In addition to the direct mail and email notice, Kroll established a dedicated website for the Settlement where relevant documents were posted for Settlement Class Members to review. Kroll Decl. ¶ 8. Kroll established a toll-free telephone number where Settlement Class Members could call an interactive voice response (IVR) system and obtain additional information regarding the Settlement. *Id*. ¶ 7. As of February 9, 2025, the IVR system has received 418 calls, and four (4) callers were connected to a live operator. *Id*.

Class Counsel also directed Kroll to send a reminder notice (with the agreement of Defendant), as the claims rate was lagging midway through the claims process. On January 9, 2026, 32,260 reminder notices were sent out by U.S. Mail to Settlement Class Members who had not yet filed a claim. *Id*. ¶ 10. The reminder notice further provided the Settlement Class with direct notice, and substantially boosted the Claims' rate.

In sum, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23 and satisfies due process requirements. The Notice Plan provided the best notice practicable and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

The Settlement has been well-received by the Settlement Class. Settlement Class Members have until February 17, 2026, to submit a claim. *Id*. ¶ 14. As of February 9, 2026, Kroll has received 2,457 Claim Forms through the mail and 1,203 Claim Forms filed electronically through the Settlement Website, for a total of 3,660 claims. *Id*. ¶ 15. This equates to a claims rate of approximately 8.27%. Kroll is still in the process of reviewing and validating Claim Forms. *Id*.

¶ 15. As of February 9, 2026, Kroll has received no requests for exclusion and no objections. *Id*. ¶ 18. No objections were received by Class Counsel, nor any filed with the Court.

In a comparable data privacy settlement, the court found that the class favored the settlement when 137 of the 2.4 million class members opted out of the settlement, one class member objected, and the claims rate was 1.46%. *See In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (E.D. Wis Mar. 22, 2023). In comparison, this litigation includes 44,910 Class Members, with none requesting exclusion and the claims rate is currently 8.27%, with nearly a week still remaining until the Claims Deadline.[3]

Finally, no Settlement Class Members has objected to the proposed Settlement, or to Class Counsel's requested attorneys' fees, expenses, and the Service Awards. *See* Kroll Decl. ¶ 18. A non-existent objection rate strongly supports a finding that the Settlement is "fair and reasonable." *See, e.g.*, *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (granting final approval of settlement with 25 objections & finding the fact that "99.9% of class members have neither opted out nor filed objections to the proposed settlements . . . is strong circumstantial evidence in favor of the settlements."). Plaintiffs submit the highly successful Notice Program implemented pursuant to the Settlement meets all the requirements of due process and Federal Rule of Civil Procedure 23, and that the Settlement should be finally approved.

---

[3] *See, e.g.*, *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions."); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (finding 0.83% claims rate "on par with other consumer cases"); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with roughly 0.23% claims rate); *Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023) (approving claims rate of 0.66%).

## V. LEGAL STANDARD

Plaintiffs bring this motion under Federal Rule of Civil Procedure 23(e), which states that a class action may not be settled without approval of the Court. The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members' claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. Rule Civ. P. 23(e)(2).

## VI. ARGUMENT

### A. Final Class Certification for Settlement Purposes is Appropriate

On October 17, 2025, this Court provisionally found that the Settlement Class met the requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—and the requirements of Rule 23(b)—predominance and superiority. ECF No. 35. Since this Order, there have been no developments that would alter this preliminary finding. The Settlement Class should now be finally certified for settlement purposes.

### B. The Rule 23(a) Requirements Remain Satisfied

*Numerosity.* Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no bright-line rule for numerosity, there is little question that a class of more than 14,000 is sufficiently numerosity under Rule 23(a)(1)." *Elzen v. Advisors Ignite USA LLC*, No. 22-C-859, 2024 WL 195473, at *3 (E.D. Wis. Jan. 18,

2024) (internal citations omitted). Here, there are approximately 44,234 Settlement Class Members. Joinder is therefore impracticable.

***Commonality.*** The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "there are numerous common contentions capable of class wide resolution" *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 922 (N.D. Ill. 2022) (cleaned up). Indeed, common questions include (i) whether Settlement Class Members' Private Information was compromised in the Data Incident; (ii) whether Defendant owed a duty to Plaintiffs and Settlement Class Members to protect their Private Information; (iii) whether Defendant breached its duties; and (iv) whether Defendant violated the common law and statutory violations. Thus, the commonality requirement is met.

***Typicality***. Plaintiffs satisfy the typicality requirement under Rule 23 because their claims based on Defendant's alleged failure to protect Plaintiffs' and Settlement Class Members' Private Information are coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (upholding typicality finding). Plaintiffs allege that their Private Information was compromised and that they were impacted by the same inadequate data security that harmed the Settlement Class. *See Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (explaining that where defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met"). As such, typicality is met.

***Adequacy***. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The test for assessing adequacy of representation under Rule 23(a)(4) "has two components: (1) 'the representatives must not possess interests which are

antagonistic to the interests of the class,' and (2) 'the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation.'" *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021) (internal citations omitted). Here, Plaintiffs are members of the Settlement Class who allegedly experienced the same injuries and seek, like other Settlement Class Members, compensation for Defendant's alleged data security shortcomings. Plaintiffs have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. Accordingly, the adequacy requirement is satisfied.

### C. The Rule 23(b)(3) Requirements Remain Satisfied

Plaintiffs also seek to certify the Settlement Class, for settlement purposes only, under Rule 23(b)(3) which has two components: (i) predominance and (ii) superiority. Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), the Court must find that common questions of law or fact predominate over individual questions and that a class action is a superior method for the fair and efficient resolution of the matter. *Id.*

1. ***Predominance.*** The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As discussed above, common questions predominate over any questions affecting only individual members. Plaintiffs' claims are based on Defendant's uniform conduct related to a Data Breach that affected all Settlement Class Members in a similar manner. Plaintiffs' claims depend on whether Defendant used reasonable data security to protect their Private Information. That question can be resolved, for settlement purposes, using the same evidence for all Settlement Class Members, and therefore, makes class-wide settlement

appropriate. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)") (cleaned up); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 926 (finding predominance in data privacy case).

      2.    **Superiority**. Furthermore, class-wide resolution is the most practical method of addressing the alleged violations in this case. While the total economic harm caused by the Data Breach is significant, each individual claim is small compared to the costs of litigating it separately. There are tens of thousands of Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See, e.g.*, *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007) ("Where, as here, a group of consumers typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure, class actions are superior to individual litigation."). Because the claims are being certified for purposes of settlement, there are no issues with manageability and resolution of thousands of claims in one action is superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

In sum, the proposed Class's claims satisfy Rule 23(b)(3)'s requirements and should be certified. Adjudicating individual actions here is impracticable—the amount in dispute for each class member is small, the technical issues involved are too complex, and the required expenses costly. Thus, the Court may continue to certify the Class for settlement.

## D. The Settlement Agreement Warrants Final Approval

A class action settlement may only be approved after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). To determine whether a settlement is fair, adequate, and reasonable the Court considers the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Under these factors, approval of the Settlement is warranted.

### 1. Fed. R. Civ. P. 23(e)(2)(A): Class Representatives & Class Counsel have Adequately Represented the Settlement Class

Class Counsel have ample experience litigating data breach class actions and are well-versed in the legal claims and risks of this case. As explained in the Declaration of Nickolas J. Hagman submitted with Plaintiffs' Unopposed Motion for Preliminary Approval, Class Counsel worked diligently to advance Plaintiffs' and Settlement Class Members' interests. *See* ECF No. 33. Prior to reaching the Settlement, Class Counsel researched and drafted the complaints, consolidated their cases, successfully briefed the opposition to Defendant's motion to dismiss, filed the amended, Operative Complaint, scheduled and participated in meet and confers with Counsel for Defendant, reviewed informal discovery, and participated in a mediation. *Id.*; *see also T.K. v. Bytedance Tech. Co.*, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) (granting final approval where "[t]he parties engaged in substantial informal discovery and information sharing over a five-month period"); Manual for Complex Litigation (Fourth) § 13.12 (2004) (recognizing

13
Case 2:24-cv-00211-LA   Filed 02/13/26   Page 13 of 18   Document 37

that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations); *id*. § 11.423 (courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery"). The procedural history of the case supports finding that Plaintiffs and the Settlement Class were adequately represented.

Plaintiffs are also adequate representatives of the Settlement Class. Plaintiffs' interests are coextensive with the interests of the Settlement Class. Here, as discussed *supra*, Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. Accordingly, they have every incentive to vigorously pursue the claims of the Settlement Class as they have done to date by remaining actively involved in this Action since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. This factor favors final approval.

### 2. Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank*, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, 2011 WL 13266498 (N.D. Ill. June 1, 2011).This presumption is applicable here because the Settlement resulted from good faith, arm's-length negotiations including a mediation with an experienced data breach class action mediator, Bruce A. Friedman, Esq., and numerous telephone conferences between experienced counsel with a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. This Settlement was reached only after informal discovery and meticulous investigation of the Data Breach. This factor supports final approval of the Settlement.

### 3. Fed. R. Civ. P. 23(e)(2)(C): the Settlement Provides Substantial Relief

#### a. Fed. R. Civ. P. 23(e)(2)(C)(i): the Costs, Risk, and Delay of Trial and Appeal Favor Final Approval

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

The Settlement provides for substantial monetary relief, as well as equitable relief in the form of data security enhancements. All Settlement Class Members are eligible to submit a claim to have their documented Out-of-Pocket Losses reimbursed up to $5,000.00; submit a claim for three years of single-bureau credit monitoring; and receive a pro rata share of the amounts remaining in the Settlement Fund after all costs and expenses are paid.

The value achieved through the Settlement is guaranteed, whereas the chances of prevailing on the merits are uncertain. Although Plaintiffs believe in the merits of their claims, success is not guaranteed. Should litigation continue, Plaintiffs face significant risks. Data breach cases are complex, with novel issues and evolving laws posing hurdles even at the pleading stage. *See e.g., Hashemi v. Bosley, Inc.*, 2022 WL 18278431, at *28 (C.D. Cal. Nov. 21, 2022) (explaining that in data breach class actions damages methodologies are largely untested and have yet to be presented to a jury). Class certification is another hurdle—and one that has been denied in other data breach cases. *See e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 WL 2155221 (D.S.C. May 14, 2024). Further, if litigation were to continue, Defendants would continue to vigorously defend the case, and the litigation could potentially span for years. Plaintiffs' likelihood of success

at trial is not certain. Considering these risks, the $1,100,000 non-reversionary Settlement Fund is a substantial recovery for the Settlement Class. The Settlement benefits are, therefore, fair, adequate, and reasonable compared to the range of possible recovery.

> b. Fed. R. Civ. P. 23(e)(2)(C)(ii): Method of Providing Relief is Effective

Under Rule 23(e), "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Notice program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. To file a claim, Settlement Class Members needed only to complete a simple, tear-off Claim Form that was attached to the Postcard Notice to opt into a *pro rata* cash payment and identity theft protection. Reimbursement for out-of-pocket losses with supporting documentation were equally easy to claim, either using the online claim form or by submitting the full paper Claim Form.

Settlement Class Members were able to submit claims online or through the mail. Kroll Decl. ¶ 15. The claims administrator, Kroll, is an experienced and nationally recognized class action administration firm. *Id*. ¶ 2. This procedure is claimant-friendly, efficient, cost-effective, and reasonable under the particular circumstances of this case. This is evident by the number of claims received by Kroll. As of February 9, 2026 (with the claim period still open until February 17, 2026), Kroll has received 3,660 claims from Settlement Class Members, which equates to a claims rate of 8.27 percent. This compares favorably with (and far exceeds) claims rates observed in other data breach class action settlements. *See* fn. 2 *supra.* Accordingly, the methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

c. Fed. R. Civ. P. 23(e)(2)(C)(iii): Proposed Award of Attorneys' Fees is Fair and Reasonable

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorneys' fees, including timing of payment." In accordance with Rule 23(e) and the Settlement Agreement, Class Counsel filed a motion seeking $366,666.67, or one-third (approximately 33.33%) of the Settlement Fund, and $13,512.82 as reimbursement for litigation expenses. This fee and expense request falls in line with other awards in data privacy cases as discussed in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. *See* ECF No. 36.

d. Fed. R. Civ. P. 23(e)(2)(C)(iv): No Additional Agreements

As no additional agreements requiring identification exist, this factor does not weigh in favor of or against final approval.

4. ***Fed. R. Civ. P. 23(e)(2)(D): the Settlement Agreement Treats Settlement Class Members Equitably***

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed settlement does not discriminate between any members of the Settlement Class. All Settlement Class Members are eligible to submit a claim for the following: documented Monetary Losses up to $5,000.00; three years of single-bureau credit monitoring; and a *pro rata* share of the amounts remaining in the Settlement Fund after all other costs and expenses are paid. Plaintiffs Brenda Raner, Julie Lewandowski, Toby Johnson, and Michael Mullarkey seek a Service Award of $2,500 each. These requested awards are well within the range that Courts in the Seventh Circuit routinely approve. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (finding "a $5,000 reward is justified based on Kolinek's role working with class counsel, approving the settlement agreement and fee application, and volunteering to play an active role if the parties continued litigating through trial"); *Am. Int'l Grp.,*

*Inc. v. ACE INA Holdings, Inc*., 2012 WL 651727, at * 16 (N.D. Ill. Feb. 28, 2012) (approving $25,000 service awards).

## VII. CONCLUSION

Because the proposed Settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that the Court grant final approval of class action settlement and enter the proposed Order.

DATED this 13th day of February, 2026.     Respectfully submitted,

By: */s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Nickolas J. Hagman
Alex Lee
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Fax: (312) 782-4485
rnhagman@caffertyclobes.com
alee@caffertyclobes.com

Kevin Laukaitis
**LAUKAITIS LAW LLC**
954 Avenida Ponce De León
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Settlement Class Counsel*